Case number 21-7129, Timothy Skrynnikov, appellant versus Federal National Mortgage Association. Mr. Saub for the appellant, Mr. Churchill for the appellate. Good morning, your honors. Good morning. May it please the court. I'm Micah Saub. I represent Plaintiff Tim Skrynnikov. I'd like to reserve four minutes for rebuttal. Your honors, when an employer bars an employee from returning to work at the expiration of his or her FMLA-protected leave period, the employer has interfered with the employee's exercise of his FMLA rights. In a scenario like that, the employee has satisfied his or her burden to present a prima violation. And at that point, the burden shifts to the employer to demonstrate, try to demonstrate, that its actions were legitimate. But Fannie Mae cannot do that in this case, didn't it? Fannie Mae argues in its brief that the job was eliminated. Fannie Mae does not- The position was automated and eliminated, and I didn't see a response to that in your reply. I beg your pardon, your honor. Did I miss something? Your honor, I don't think, I'm not sure that Fannie Mae actually made that argument, only that they, that was the reason for not returning him. Maybe this is a distinction without much meaning, but far more important. Definitely. Far more important, your honor, is the law that governs such claims. In order to demonstrate that an employee was removed for some other legitimate reason, which, of course, is perfectly acceptable in an FMLA scenario, you have to demonstrate that the job did not exist when the employee was ready to return. Is your point that they didn't prove that in the district court? Because that's what they argue in their appellate brief, that the job no longer existed. Isn't that its argument? That's correct, but there was no- What did you say in your reply brief? I'm afraid I don't remember the words of my reply brief well enough to answer that question, your honor. But I will say that this argument was proffered by the defendant without any evidentiary support, but more importantly, the law requires- See, that's why I asked you the question. I would have expected you to respond to that brief, and I didn't see that. I'm sorry. There was no evidentiary support for that claim. And, in fact, the evidence shows that they advertised this same position after Mr. Skrinnikoff was fired. He received a phone call from a headhunter saying, hey, this job looks really good for you. And he said, yeah, it sure does, because it was my job. So I'm sorry, I have the end of a cold, so my voice is weak. But you said, Mr. Selv, that the employer would have to prove that the job no longer existed when the employee was ready to return to work. I'm not sure I'm following the importance of the timing. If the employee returned to work and one day later the employer said, getting rid of your job, why wouldn't that be equally a full defense? Why does the timing when the employee was ready to return to work? And let me just put my cards on the table. It seems to me that Annie Mae wanted to allow Mr. Skrinnikoff to take the paid leave under its policy. He could have terminated the job and gotten rid of him earlier. But it afforded him the full period paid disability leave before formally eliminating the job. I'm not sure what's wrong with that. Well, I'm not sure that that's factually correct, Judge Blarg, because, in fact, he was covered by this leave policy. And there's no evidence in the record that he would have ceased to be covered by whatever leave policy. Of course, FMLA leave is not, if so facto, paid leave. And if Mr. Skrinnikoff was being paid, you know, there's just nothing in the record that indicates that they had any desire for him to be paid or for him to continue to be paid. My real question is, is how you characterize the employer's burden that it had to prove a job no longer exists when the employee was ready to return to work? Well, that's the. Can't it just show at any time that the job no longer exists? And that's its prerogative. Yes, absolutely, Your Honor. It is absolutely the employer's prerogative to terminate, to have a reduction in force. Whenever there is a legitimate termination of a job or, for that matter, if Fannie Mae believed that Mr. Skrinnikoff's job performance was inadequate or that his attitude was bad, they could have fired him at any time, even while he was on leave. They didn't do so. They didn't do so because there wasn't evidence in the record to support that. Now, as to the issue of the timing. I just don't understand that argument. I'm sorry. That didn't make any sense to me. Judge Tatel, when somebody's out on FMLA leave, they're still subject to the ordinary vicissitudes of employment, right? If there's a reduction in force, you're out of luck. You don't get special protection because you're on FMLA leave. However, if the employer wants to say, hey, we got rid of this employee for legitimate reasons. And first and foremost, the employer has to prove that as a matter of fact. And there's no evidence in the record to support that claim. Second, is the arbitration proceedings not evidence? It does. It does. And there was a bold assertion by one of the witnesses that that was the reason that they chose not to keep him. After. His leave period expired. That was what the test was testimony. Laurie Malin about the trip and Carrie Lee and Kristen Harrison about automating the position. Automating. Yeah, that's what they said was the reason. I think there's also testimony from Mr. Sprint off indicating that he was hired in part to implement that automation. But that automation affected only a very small part of his job. But what's I think more important is that Fannie Mae does not hang its hat on having legitimately terminated Mr. They claim that it was proper for them to terminate him. Because he didn't submit his family leave return to duty fitness for duty certification in time. That can't be why they terminated him, because he was given all his federal and D.C. FMLA, a leave and also given the short term disability leave. He got all of that. They gave it all to him. So that can't be. And it wasn't until he returned that they then fired him. Listing this other reason. No, no judgment. They he had used up his full period of federal FMLA. He was then in the position. They gave him all of his D.C. FMLA leave to retroactively. But they gave it all to him. That is true. OK, I mean, I think they also gave him some of the short term disability leave, too. Did they not? He got to what? November 1st. I missed that last thing. He was out until November 1st. I don't I don't know whether, in fact, he received any short term disability leave afterwards, but I don't think that's right. Regardless, he got all of his. This claim is not a denial of leave allowance. This is a claim for denial of job restoration rights and for interference. What Fannie Mae did in that was an interference. If he got all the leave at the end of the day, he was in his right to be restored to his job. That the interference claim is the same as what you called his restoration. It's that there's one claim. It's the right to be restored. Yeah, I mean, I think it's a matter of semantics. I would say that there are two different claims, but effectively their argument is exactly the same as that. He wasn't given his job back. He wasn't given his job back. And they interfered with his efforts to return to work. OK, for your interference claims, I guess there's two categories for the interference claims. You cite you rely on McFadden and. And Gordon and those cases require that you show prejudice for your interference claims, right? I'm sorry. I didn't hear you. I'm sorry. Those those cases that you cite for the burden of proof require that you show prejudice. These are for the interference claim, correct? Yes. And where have you done that? OK, first, I'm not entirely sure that the law in this circuit requires a showing of prejudice. I was just I was just relying on the cases that you say. OK, but you're on to cite those cases. I suspect I did. I'll rely on the court's statement. Your Honor, the prejudice is clear. No, no, no. Yeah. Anything else? OK, thank you. Thank you. We'll hear from counsel for Fannie Mae. And please, the court. Fannie Mae gave Mr. All that he was entitled to under federal and D.C. right to return from protected leave in the period from October 26th to 29th. Two thousand and nine. This interference claim fails for two independent reasons. First, the record shows that Mr. Squinnikov was trying to stay out of work until November. Second, you see law imposes none of the procedural requirements that Fannie Mae allegedly violated. Because the first argument is factual, I know that the outset, Mr. Squinnikov's agreement on page four of his report that none of the facts on which the district court relied in its opinion are disputed. And this includes the fact that Mr. Squinnikov went to an urgent care facility and specifically asked for a note allowing him to stay out of work until November 2nd, even though he had already been told by an emergency that he was medically fit for duty as soon as October 16th. The district court concluded. I understand his claim was trying to get further medical leave. You just want to take vacation. And so he's done with his medical leave and he just says, I'm uncomfortable. Yeah, I could work. I'm uncomfortable because I have broken ribs and I have a medical leave. And in my life, I just rather use that now. And then there's this sort of, you know, jerking him around a bit on whether he needs a separate fitness for duty relating to the ribs. And that ends up without telling him during this whole process. Actually, we're limiting your job and actually you don't need to justify taking your vacation time. I mean, it seems like it really was unprofessional, at least. How can you explain how Fannie Mae conducted this? Your Honor, I'd like to respond in two ways. First, Fannie Mae did tell Mr. Skrinnikov how he could obtain the vacation time if he wanted to continue pursuing that route. Talk to the manager. Yes, exactly. Speak with the manager. And it's undisputed that he didn't continue to pursue that. Second, the district court found, and I believe it's undisputed, that Fannie Mae required a return to work certification pursuant to its standard policy and practice, acting out of a concern about a duty to ensure that when people come back to the workplace after expressing medical concern, that it's safe for them and for other employees. The record also shows that... After expressing medical concern? Like, that's if you're taking medical leave, isn't it? Your Honor, an employee doesn't have to expressly invoke the FMLA or the DC FMLA. If they're seeking medical leave in terms or not, but here he made clear he wasn't seeking medical leave. He was seeking vacation time. Your Honor, I think initially vacation was a possibility that he put out there. When he raised that he wanted time out of work for medical reasons, Fannie Mae understood that it had an obligation to determine whether he was entitled to medical leave. And on the other hand, whether he was safe to return to work. They didn't want to prevent him from taking advantage of the rights to which he was entitled under statute or under the company's short term disability policy and burn vacation time unnecessarily. If that was an option that was developed. Let me just say, here's one way of reading the record. You tell me why I'm wrong. Okay? Mr. Skrinnikoff, all the problems started when he, taking the facts in light most favorable to him, wanted to be the truth teller and was concerned that a supervisor wasn't. That he was shunted off into taking leave, some kind of formal leave when he just wanted to use his vacation time by Fannie Mae. Fannie Mae, and this is in the record, told Reed Group a special case, special scrutiny. Look at him, his claims with an exacting eye. Fannie Mae interfered with and overrode Reed Group judgments in a way that it hadn't traditionally. And seemed to be imposing a bunch of ad hoc requirements. And there's a very short time between the end of protected leave and termination. Why isn't that enough to meet a summary judgment? There are several parts of that question. I'll try to respond in three parts. As for the origin of this issue being Mr. Skrinnikoff's desire to ensure that the truth is told to the Senate. And a conflict with his manager over that issue. First of all, he withdrew the claim with credit. I'm not saying it's a false claim. I'm talking about the record here. That Fannie Mae had reason to be irritated with him. To want to get rid of him. To be upset with him. To give him special scrutiny. Not in a positive way. All right, so I'm not asserting a false claim. That doesn't respond to what I'm saying here is the summary judgment evidence that he's come forward with. Why isn't that enough to defeat Fannie Mae's claim for summary judgment? As to the merits of the truth-telling issue. The contemporaneous record including Mr. Skrinnikoff's notes from the April 28th meeting where he alleged he discussed this with the manager. The complaints that he submitted to Fannie Mae's ethics and compliance. All the contemporaneous records say nothing about what was being reported to the Senate. He actually complained that he was being discriminated against on the basis of national origin. Which is a claim he chose not to pursue further. It's undisputed that his responsibilities have been automated. I think trying to read in an alternate reason for his termination is not supportive. Why does it matter that this position was automated? Because the Family Medical Leave Act doesn't require reinstatement to the exact position. As long as it's sort of an equivalent position. So saying this particular one was automated is no answer to the duty to reinstate him. As to that, I think you're right. The record doesn't address if Mr. Skrinnikoff agreed this could be decided on summary judgment. The record as it's been developed doesn't address the existence of equivalent roles. Whose burden was it to show that there was not a role to which he could be returned? Because Fannie Mae just says, well, we automated yours. Do you have a case or something to help me understand how that is sufficient or responsive under statutory requirements? Simply that he be restored to an equivalent, the same or equivalent position? I don't, standing here today. Don't you have to have that? No, I don't think so. Because the record shows that Mr. Skrinnikoff was terminated after his leave was exhausted. Sure, but if we've had an opinion that says as long as you wait 24 hours after they come back to work or 48 hours and then terminate him, we're good with that. And you can terminate him because they can't go to the exact position, even though that's not the test under Family Medical Leave Act. That would seem to really gut the, I'm just using collectively the two FMLAs, similar requirements of restoration to an equivalent position. To simply say, we can just get rid of the one position and just wait 48 hours. I think this maybe brings us back to two other parts of your initial question. You mentioned the language about the high level of scrutiny, the special case, and the sensitive case. If you look in the record at pages 501, 503, also 639 to 40 of the joint appendix, what you see is undisputed testimony. The term special case and sensitive case were used to refer to a situation where the company thought there was actually a chance that medical leave might be exhausted. That's not undisputed. The fact sheet used to be drawn from those emails is not remotely undisputed. He has a very different reading of what that meant. You're not telling me that's undisputed, are you? There's no controverting evidence. I agree it has a different read. What evidence did you put into the record that that's what special scrutiny meant? Did you have a declaration or testimony or something like that? Testimony and arbitration, the joint appendix citations that I provided. OK. Then turning to. Give me just one moment. You mentioned the ad hoc requirements and the district court determined that the requirements Fannie Mae imposed were pursuant to their standing policy. The policies in the record. Indicate that Fannie Mae required a an employee who raises a medical concern to be referred to read a group for evaluation. And this was something which applied across the board is not expressly used to target Mr. I think you were out of time, but we'll give you two minutes. If you'd like. Thank you, Your Honor. I don't know any lawyer who would not like. Well, sometimes they say they don't. I'm happy to talk. Two minutes. There are a couple of points that I that I'd like to make. In reply, first. Fannie Mae says when we learned that Mr. Skrinnikoff had a rib injury, we had a duty to do something about it. Perhaps so, perhaps so, if we presume that to be true, that duty does not include a bridging FMLA rights. The policy says we refer the regroup. He went to the regroup and the regroup sent him away, saying, no, no, you're fine. You don't need anything else. And Fannie Mae overruled the regroup. Now, that overruling is particularly telling because the undisputed testimony was that the regroup's job was to make final determinations. Regarding the final determinations, not recommendations, not suggesting final determination. So Fannie Mae's overruling of the regroup on several occasions and frequently accompanied by what I can describe only as nonsensical explanation. Is evidence of mendacity and also shows that there wasn't a legitimate basis for rejecting Mr. Skrinnikoff's return on that basis. One thing I want to make clear here or to make sure I understand clearly here. The relief you want from this court is to enter summary judgment in your favor, direct the entry of summary judgment in your favor. Is that your argument or is it that, no, we need to go back and have a trial? There's clearly disputed facts here that are relevant. I think that the only way to read the facts in this case is in Mr. Skrinnikoff's favor. I do believe that it was error not to grant summary judgment because none of the facts that are in dispute, the extent that either the facts themselves or maybe the read from the facts are in dispute, are material. Okay, so that's what you're seeking. You're not seeking a trial? Well, obviously I'll take what I can get. Well, you had your trial thing and you said you wanted summary judgment instead, so that's what I'm just trying to understand. Your burden on this appeal is to show that the district court erred in not granting summary judgment for you on this record. Yes, Your Honor. I believe that the district court erred both in granting summary judgment to Fannie Mae, and if that's as far as this court goes, then it would be a return for a new proceeding. Perhaps if this court believes that there are facts in dispute, then the proceeding would have to be a trial before a jury instead of on the papers. If this court agrees with me that there's no inter-reading of the facts in this case other than in Mr. Skrinnikoff's favor, then this court should grant summary judgment to Mr. Skrinnikoff. Ms. Trussell, you said you thought there was no record evidence that the job had been automated. And I'm looking at the Fannie Mae's statement of material facts not in dispute where they say by the third quarter or so of 2009, the work was fully automated, primarily fully automated. And I don't take Mr. Skrinnikoff's corresponding statement of material facts not in dispute to take issue with that. It just says he doesn't think it's relevant. And I just, I don't see how it could be not relevant if there's a legitimate independent reason. And as you acknowledge in your primary argument, of course, the employer retains the prerogative to let an employee go when they no longer need the employee. So what is what is your position in light of, at least in my reading, the fact that there is evidence in the record fully automated the job? Oh, there are a few points, Your Honor. First, I don't think it's fair to say that that issue is responsive to the gravamen of our complaint. Our complaint is that Fannie Mae interfered with Mr. Skrinnikoff's return to work. He wants to come back. They say, no, first you need to provide this. Right. But even granting everything you say, you're right. Everything you say. But independently, the job has evaporated and Mr. Skrinnikoff has never said, what about another job? I want to come back to another job. Then what is his position? How does he clear that hurdle that for reasons unrelated to his leave? Well, I think one of the issues and part of the reason I'm sort of struggling with this is that this statement that his job had been eliminated was entirely post hoc. That occurred, that issue, that factual assertion arose only at the mediation. This is not an intent case, the way you've litigated it. It's an interference case. So I'm not sure the post hocness matters. I think it does, Your Honor. Why? Because when they state throughout the period where they're tussling, Mr. Skrinnikoff, you need to provide a fitness for duty certification. Regroup says, no, you don't. You're fine. You're cleared to go back. Then he makes this, oh, no, no, no, we're going to overrule. In fact, they lie. They said, no, no, the regroup says you do need a return to work certification. So then they direct the regroup to demand that. And we have this back and forth, which, as you can imagine, I'd love to go through and endlessly and share with you, but you've read it in the briefs. There's this long back and forth, never once does Fannie Mae say a word about his job having been eliminated, about him no longer being needed. This issue arose when Fannie Mae was looking for a defense after the fact, and it is simply done. It is simply a post hoc rationalization. Finish your sentence unless there's any. Thank you. Thank you. Thank you. Thank you, gentlemen. The case is submitted.
judges: Tatel, Millett, Pillard